Jason S. Ritchie
Michael P. Manning
Ritchie Manning Kautz PLLP
175 North 27th Street, Suite 1206
Billings, MT  59101
Telephone:  (406) 601-1400
Fax:  (406) 545-0412
jritchie@rmkfirm.com
mmanning@rmkfirm.com

*Counsel for Plaintiff Coulter Hill*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS

| | | |
|---|---|---|
| COULTER HILL, | ) | _____ |
| Plaintiff, | ) | |
| v. | ) | |
| BIG HORN COUNTY ELEMENTARY SCHOOL DISTRICT 2 (ARROW CREEK ELEMENTARY SCHOOL DISTRICT); BIG HORN COUNTY HIGH SCHOOL DISTRICT 3 (PLENTY COUPS HIGH SCHOOL DISTRICT); SAMPSON DeCRANE, MARLA GOES AHEAD, FANNIE CLIFF, JENNIFER FLATLIP, and EUGENE RED STAR. | ) | **COMPLAINT AND JURY DEMAND** |
| Defendants. | ) | |

Plaintiff Coulter Hill, Ed.D, by and through counsel, states and alleges the following for his Complaint against Defendants Big Horn County Elementary School District 2 (Arrow Creek Elementary School District), Big Horn High School District 3 (Plenty Coups High School District), Sampson DeCrane, Marla Goes Ahead, Fannie Cliff, Jennifer Flatlip and Eugene Red Star.

## PARTIES, JURISDICTION AND VENUE

1.     Dr. Hill is an individual who at all relevant times has been a resident of Yellowstone County, Montana.

2.     Big Horn County Elementary School District 2 (Arrow Creek Elementary School District) is a public school district located in Big Horn County Montana.

3.     Big Horn High School District 3 (Plenty Coups High School District) is a public school district located in Big Horn County Montana.

4.     Sampson DeCrane is an individual who, upon information and belief, resides within Big Horn County Montana.  Sampson DeCrane was, at all relevant times, the Chairman of the Board of Trustees of Big Horn County Elementary School District 2 (Arrow Creek Elementary School District) and Big Horn High School District 3

1

(Plenty Coups High School District) (collectively, the "District").

5.     Marla Goes Ahead is an individual who, upon information and belief, resides within Big Horn County Montana.  Marla Goes Ahead was, at all relevant times, a member of the District's Board of Trustees.

6.     Fannie Cliff is an individual who, upon information and belief, resides in Big Horn County Montana.  Fannie Cliff was, at all relevant times, a member of the District's Board of Trustees.

7.     Jennifer Flatlip is an individual who, upon information and belief, resides in Big Horn County Montana.  Jennifer Flatlip was, at all relevant times, a member of the District's Board of Trustees.

8.     Eugene Red Star is an individual who, upon information and belief, resides in Big Horn County Montana.  Eugene Red Star was, at all relevant times, a member of the District's Board of Trustees.

9.     This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 because Dr. Hill's claim for violation of 42 U.S.C. § 1981 arises under the laws of the United States and pursuant to 28 U.S.C. § 1367 because Dr. Hill's remaining claims are so related to his § 1981 claim that they form part of the same case

or controversy under Article III of the United States Constitution.

10.     Venue is appropriate in this Court because the defendants reside in this judicial district and the events or omissions giving rise to the claim occurred within this judicial district.  28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

11.     Dr. Hill incorporates by reference every statement and allegation contained in all preceding paragraphs as though fully set forth herein.

12.     Dr. Hill was hired to be the Superintendent of the District in Pryor, Montana effective July 1, 2019.

13.     Dr. Hill's employment with the District was subject to an employment agreement signed by the parties on July 8, 2019 ("Employment Agreement").

14.     Dr. Hill's Employment Agreement provides that the District would employ him as its Superintendent for a term of two years, from July 1, 2019 to June 30, 2021.  By its terms, his Employment Agreement was "to be renewed for a further term of 1 year from year to year unless the Board, prior to February 1 of the final year of this contract, resolves by majority vote to terminate the services of the

3

Superintendent at the conclusion of the term of this contract, and

provides to the Superintendent written notice of the Board's intent to

terminate the Superintendent's services at the conclusion of the

contract term."

15.    Under the terms of Dr. Hill's Employment Agreement, the

District agreed to pay him an annual salary of $90,000, a monthly

phone allowance of $130.00, a monthly transportation stipend of

$300.00, and a monthly housing allowance of $400.00.  The District also

provided Dr. Hill with holiday pay, vacation pay, personal leave, sick

leave, payment of professional dues, travel reimbursement, health

insurance, dental insurance and vision insurance.

16.    Immediately after he was hired, Dr. Hill was asked

questions regarding his race.  Specifically, a member of the hiring

committee asked Dr. Hill where he was from because members of the

community believed that he was native.

17.    The District's vision statement is a quote from Chief Plenty

Coup:  "Education is your most powerful weapon.  With education you

are the white man's equal; without education you are his victim."  The

District has this quote set out on a large sign when you enter the

4

elementary school building.

  18. During an August 6, 2019 meeting of the Board of Trustees ("School Board"), Dr. Hill requested that the District shorten its vision statement to "Education is your most powerful weapon" to make the mission about education and not race. The Defendants became upset with his request and declined to modify the vision statement.

  19. The District sent a community member called "Spooky" to Dr. Hill's office on multiple occasions to "tell him how things are done in Pryor" as opposed to the "white man's way."

  20. During a September 19, 2019 School Board meeting, attendees engaged in intimidating behavior towards Dr. Hill. They made negative and accusatory comments about his character, and one attendee suggested physically harming Dr. Hill. When Dr. Hill attempted to speak, attendees laughed and heckled him. Attendees repeatedly used phases such as "whiteman's way" and "white man's world" and "white devil," which were offensive and directed at Dr. Hill because of his race.

  21. The Defendants failed to stop these verbal attacks and some School Board members joined the attendees in engaging in such

behavior.  During the meeting, School Board members and attendees

spoke in the Crow language.  The School Board, fully aware that

Dr. Hill does not speak the Crow language, refused to interpret what

was being said despite Dr. Hill's repeated requests and despite that

Dr. Hill was clearly the subject of much of the discussion.

22.    The September 19, 2019 lasted 5 hours and 51 minutes and

was recorded by the District.  When Dr. Hill requested a copy of the

recording, however, the District produced only 3 hours and 25 minutes

of the meeting.  The District deliberately manipulated the record of the

meeting by either failing to record more than two hours of the meeting

or by deleting over two hours of the recording.

23.    On September 20, 2019, Dr. Hill explained to Defendants

DeCrane and Goes Ahead that he would not be attending a previously-

scheduled, work-related conference in Washington D.C. because of the

events at the September 19, 2019 School Board meeting.  On September

23, 2019, DeCrane and Goes Ahead responded that Dr. Hill would be

financially responsible for the costs of the conference and accused him

of not being willing to "mend relationships."  They also compared him to

a past Caucasian superintendent that was disliked by the community.

24.    The Defendants held another School Board meeting on September 26, 2019.  During the meeting, Dr. Hill informed the Defendants that he had filed a complaint of discrimination with the Montana Human Rights Bureau.

25.    After Dr. Hill notified the Defendants of his discrimination complaint, the Defendants asked a staff attorney with the Montana School Board Association how the Defendants should proceed.  The Defendants were advised by the attorney to "immediately cease this meeting, come out of executive session, and not discuss the matter further until I have the ability to complete the internal review and advise the trustees or Chair in a manner consistent with the Superintendent's due process rights."

26.    Instead of immediately ceasing the meeting as advised, the Defendants attacked and retaliated against Dr. Hill for filing the charge of discrimination.  The Defendants yelled, swore, and falsely accused Dr. Hill of discrimination.  The meeting was filled with comments regarding Dr. Hill's race.  The meeting culminated with Defendant DeCrane yelling: "Fuck you Coul Hill! Fuck you! Fuck you! I fucking quit! Fucking quit the school board!"  After Defendant Flatlip stated

7

that she quit too, Defendant DeCrane threw a chair and threw his pen at Dr. Hill while yelling: "Fuck you Coul Hill! You fucking son of a bitch!"

27.    Then, beginning the following day, the Defendants solicited numerous baseless and unwarranted complaints against Dr. Hill and forwarded those complaints to their attorneys.

28.    Due to (a) the September 19, 2019 School Board meeting where the Defendants failed to stop intimidating verbal attacks—including threats of physical harm—toward Dr. Hill, and (b) the Defendants' conduct during the September 26, 2019 School Board meeting, Dr. Hill repeatedly expressed to the Defendants that he felt unsafe at work and asked how the Defendants intended to provide for his safety at work.  Specifically, Dr. Hill requested that he be allowed to work from home until his safety concerns were addressed by the Defendants.

29.    The Defendants dismissed Dr. Hill's safety concerns.  They refused to allow him to work from home and refused to take any other action to provide Dr. Hill a safe work environment.

30.    Instead, on October 7, 2019, Defendants voted to place

Dr. Hill on administrative leave so they could investigate the complaints that they had solicited.  The Defendants also voted to discontinue some of the benefits contained in Dr. Hill's Employment Agreement.

31.     After placing Dr. Hill on administrative leave, the Defendants continued soliciting employee complaints against Dr. Hill, and created a process by which the Defendants would review the complaints they solicited.

32.     On November 12 and 13, Defendants held school board meetings to address the complaints against Dr. Hill.  Dr. Hill hired counsel to defend against these unwarranted employee complaints.

33.     On December 3, 2019, the Defendants issued their findings regarding the complaints against Dr. Hill, finding in Dr. Hill's favor. Specifically, the Defendants found that the complaints against Dr. Hill did not "support a finding of workplace bullying, harassment, and intimidation" and the complaints "fail to demonstrate that your actions arise to the level of a threat or an attempted intimidation of an employee."  Illustrating that their original intent was to retaliate against Dr. Hill for filing his discrimination claim by using the solicited

9

complaints to terminate his employment, the Defendants ultimately concluded that "the Board does not find that the complaints as presented, warrant the termination of your employment."

34.    Yet, despite finding that the solicited complaints did not provide a basis for taking any adverse employment action against Dr. Hill, the Defendants continued their retaliatory and discriminatory conduct by demanding that Dr. Hill attend and complete management training focused on effective communication with employees and cultural sensitivity training.

35.    Further, the Defendants demanded that Dr. Hill immediately return to work while continuing to refuse to address his safety concerns.  Indeed, the Defendants expressly stated that they "w[ould] not consider other conditions as the Board's position is there is no basis for your feeling that you are unsafe at the Pryor Schools."

36.    The letter communicating the Defendants' position that Dr. Hill had no basis for feeling unsafe was signed by Defendant DeCrane, the same individual who, in his capacity as the Chairman of the School Board, had aggressively yelled at Dr. Hill using extremely foul language while throwing a chair across the room and throwing a

10

pen at Dr. Hill, all during a School Board meeting.

37.    Dr. Hill continued to request that the Defendants provide him a safe working environment, but the Defendants refused and dismissed his fear as unwarranted.  The Defendants went so far as to claim that Dr. Hill's "alleged fear remains unreasonable and suspect, particularly in the context of Mr. Hill's past experience in extremely rowdy and rough environments during his time as a rapper." Essentially, the Defendants found it entirely appropriate for the School Board Chairman to scream profanities at Dr. Hill and throw things simply because Dr. Hill had previously performed rap music before becoming an educator.

38.    On December 16, 2019, Defendants terminated Dr. Hill's employment effective December 18, 2019.

## COUNT I—DISCRIMINATION (ALL DEFENDANTS)
### (42 U.S.C. § 1981)

39.    Dr. Hill incorporates by reference every statement and allegation contained in all preceding paragraphs as though fully set forth herein.

40.    Defendants intentionally discriminated against Dr. Hill because of his race by, *inter alia*:  not providing an interpreter or

interpretation when members of the public and the School Board spoke in the Crow language during School Board Meetings; swearing and threatening Dr. Hill; soliciting complaints against Dr. Hill; placing Dr. Hill on administrative leave; removing benefits guaranteed by Dr. Hill's Employment Agreement while he was on administrative leave; refusing to provide Dr. Hill with a safe working environment; and terminating his Employment Agreement and employment.

41.    As a direct result of Defendants' discrimination, Dr. Hill suffered and continues to suffer damages, including, but not limited to, lost wages and benefits, lost future wages and benefits, attorneys' fees and costs, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and loss of earnings from the harm to Dr. Hill's reputation.

42.    Defendants actions were done with malice or reckless indifference to Dr. Hill's federally protected rights and Dr. Hill is entitled to recover punitive damages for Defendants' violations of 42 U.S.C. § 1981.

## COUNT II—HOSTILE WORK ENVIRONMENT
## (ALL DEFENDANTS)
## (42 U.S.C. § 1981)

43.    Dr. Hill incorporates by reference every statement and

allegation contained in all preceding paragraphs as though fully set

forth herein.

44.    Defendants subjected Dr. Hill to a hostile work environment

because of his race by, *inter alia*:  not providing an interpreter or

interpretation when members of the public and the School Board spoke

in the Crow language during School Board Meetings; swearing and

threatening Dr. Hill; soliciting complaints against Dr. Hill; placing

Dr. Hill on administrative leave; removing benefits guaranteed by

Dr. Hill's Employment Agreement while he was on administrative

leave; refusing to provide Dr. Hill with a safe working environment; and

terminating his Employment Agreement and employment.

45.    As a direct result of the hostile work environment, Dr. Hill

suffered and continues to suffer damages, including, but not limited to,

lost wages and benefits, lost future wages and benefits, attorneys' fees

and costs, pain, suffering, inconvenience, mental anguish, loss of

enjoyment of life, and loss of earnings from the harm to Dr. Hill's

reputation.

46.     Defendants actions were done with malice or reckless

indifference to Dr. Hill's federally protected rights and Dr. Hill is

entitled to recover punitive damages for Defendants' violations of

42 U.S.C. § 1981.

**COUNT III—RETALIATION**
**(ALL DEFENDANTS)**
**(42 U.S.C. § 1981)**

47.     Dr. Hill incorporates by reference every statement and

allegation contained in all preceding paragraphs as though fully set

forth herein.

48.     Defendants retaliated against Dr. Hill for filing a charge of

discrimination with the Montana Human Rights Bureau by, *inter alia*:

not providing an interpreter or interpretation when members of the

public and the School Board spoke in the Crow language during School

Board Meetings; swearing and threatening Dr. Hill; soliciting

complaints against Dr. Hill; placing Dr. Hill on administrative leave;

removing benefits guaranteed by Dr. Hill's Employment Agreement

while he was on administrative leave; refusing to provide Dr. Hill with

a safe working environment; and terminating his Employment

14

Agreement and employment.

49.     As a direct result of the retaliation, Dr. Hill suffered and

continues to suffer damages, including, but not limited to, lost wages

and benefits, lost future wages and benefits, attorneys' fees and costs,

pain, suffering, inconvenience, mental anguish, loss of enjoyment of life,

and loss of earnings from the harm to Dr. Hill's reputation.

50.     Defendants actions were done with malice or reckless

indifference to Dr. Hill's federally protected rights and Dr. Hill is

entitled to recover punitive damages for Defendants' violations of 42

U.S.C. § 1981.

### COUNT IV—BREACH OF CONTRACT
### (SCHOOL DISTRICT DEFENDANTS)

51.     Dr. Hill incorporates by reference every statement and

allegation contained in all preceding paragraphs as though fully set

forth herein.

52.     The District breached the Employment Agreement by, *inter*

*alia*:  not providing an interpreter or interpretation when members of

the public and the School Board spoke in the Crow language during

School Board Meetings; swearing and threatening Dr. Hill; soliciting

complaints against Dr. Hill; placing Dr. Hill on administrative leave;

removing benefits guaranteed by Dr. Hill's Employment Agreement

while he was on administrative leave; refusing to provide Dr. Hill with

a safe working environment; and terminating his Employment

Agreement and employment.

53.    As a direct result of the retaliation, Dr. Hill suffered and

continues to suffer damages, including, but not limited to, lost wages

and benefits, lost future wages and benefits, and attorneys' fees and

costs.

## COUNT V—BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (SCHOOL DISTRICT DEFENDANTS)

54.    Dr. Hill incorporates by reference every statement and

allegation contained in all preceding paragraphs as though fully set

forth herein.

55.    Implied in the Employment Agreement is a covenant of good

faith and fair dealing, which is a contractual term imposed by Montana

law.

56.    The District breached the implied covenant of good faith and

fair dealing by, *inter alia*:  not providing an interpreter or interpretation

when members of the public and the School Board spoke in the Crow

language during School Board Meetings; swearing and threatening Dr. Hill; soliciting complaints against Dr. Hill; placing Dr. Hill on administrative leave; removing benefits guaranteed by Dr. Hill's Employment Agreement while he was on administrative leave; refusing to provide Dr. Hill with a safe working environment; and terminating his Employment Agreement and employment.

57.     As a direct result of the retaliation, Dr. Hill suffered and continues to suffer damages, including, but not limited to, lost wages and benefits, lost future wages and benefits, and attorneys' fees and costs.

## COUNT VI—VIOLATION OF MONTANA SAFE PLACE TO WORK ACT
## (SCHOOL DISTRICT DEFENDANTS)

58.     Dr. Hill incorporates by reference every statement and allegation contained in all preceding paragraphs as though fully set forth herein.

59.     Montana law requires employers to provide a place of employment that is safe for each employee.  Mont. Code Ann. § 50-71-201(1).

60.     Montana law requires employers to adopt and use practices,

17

means, methods, operations, and process that are reasonably adequate to render the place of employment safe.  Mont. Code Ann. § 50-71-201(3).

61.    Montana law requires employers to do any other thing reasonably necessary to protect the life, health and safety of the employer's employees.  Mont. Code Ann. § 50-71-201(4).

62.    The District failed to provide Dr. Hill with a safe workplace by, *inter alia*:  allowing members of the public and School Board to swear at and threaten Dr. Hill; refusing to take any steps to provide Dr. Hill with a safe working environment; and terminating his Employment Agreement and employment when he demanded a safe place to work.

63.    As a direct result of the District's failure to provide a safe workplace, Dr. Hill suffered and continues to suffer damages to be proven at trial.

## COUNT VII—BLACKLISTING
## (ALL DEFENDANTS)

64.    Dr. Hill incorporates by reference every statement and allegation contained in all preceding paragraphs as though fully set forth herein.

18

65.    Montana law prohibits the blacklisting of any discharged employee.

66.    The Defendants have refused to provide Dr. Hill with written certification that he worked for the District from July 1, 2019 to December 18, 2019.

67.    As a direct and proximate result of Defendants failure to provide the certification of employment, Dr. Hill is not able to secure employment as a superintendent.

68.    By refusing to provide the certification of employment, the Defendants engaged in actual fraud and actual malice because they knew or intentionally disregarded facts that created a high probability of injury to Dr. Hill, yet deliberately proceeded to act in conscious or intentional disregard of, or with indifference to, the high probability of injury.

69.    Accordingly, Dr. Hill is entitled to recover punitive damages for the Defendants' violations of § 39-2-803, MCA.

## REQUEST FOR JURY TRIAL

Dr. Hill respectfully demands a trial by jury on all claims and issues so triable.

19

## PRAYER FOR RELIEF

**WHEREFORE**, Dr. Hill prays for judgment against the

Defendants as follows:

1.　　For judgment in favor of Dr. Hill and against the

Defendants;

2.　　For lost wages and benefits, lost future wages and benefits,

attorneys' fees and costs, pain, suffering, inconvenience, mental

anguish, loss of enjoyment of life, and loss of earnings from the harm to

Dr. Hill's reputation.

3.　　For punitive damages as allowed under state and federal

law;

4.　　For costs, interest and attorneys' fees as allowed by law;

5.　　For such other and further relief that this Court deems just

and proper.

Dated:  April 8, 2020.

　　　　　　　　　　　　　*/s/Jason S. Ritchie*
　　　　　　　　　　　　　Jason S. Ritchie

　　　　　　　　　　　　　*Counsel for Coulter Hill*