IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| COULTER HILL,<br><br>Plaintiff,<br><br>vs.<br><br>BIG HORN COUNTY ELEMENTARY SCHOOL DISTRICT 2 (ARROW CREEK ELEMENTARY SCHOOL DISTRICT), BIG HORN COUNTY HIGH SCHOOL DISTRICT 3 (PLENTY COUPS HIGH SCHOOL DISTRICT, SAMPSON DECRANE, MARLA GOES AHEAD, FANNIE CLIFF, JENNIFER FLATLIP, and EUGENE RED STAR,<br><br>Defendants. | CV 20-42-BLG-SPW-TJC<br><br><br>**FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE** |

Plaintiff Coulter Hill ("Hill") filed this action against Defendants Big Horn County Elementary School District 2 (Arrow Creek Elementary School District), Big Horn High School District 3 (Plenty Coups High School District), and Board of Trustee members Sampson DeCrane, Marla Goes Ahead, Fannie Cliff, Jennifer Flatlip and Eugene Red Star (collectively, "Defendants"), alleging federal question jurisdiction under 28 U.S.C. § 1331 for claims arising under 42 U.S.C. § 1981, and supplemental jurisdiction under 28 U.S.C. § 1367 for claims arising under state law. (Doc. 1 at ¶¶ 2-9.) Hill raises seven causes of action in his Complaint:

1

Discrimination (Count I), Hostile Work Environment (Count II), and Retaliation (Count III) under 42 U.S.C. § 1981, as to all Defendants; and Montana state law claims for Breach of Contract (Count IV); Breach of the Implied Covenant of Good Faith and Fair Dealing (Count V); violation of the Montana Safe Place to Work Act, Mont. Code. Ann. § 50-71-201 (Count VI); and Blacklisting (Count VII) under Mont. Code. Ann. § 39-2-803, as to the School District Defendants. (*Id.* at ¶¶ 39-69.)

Before the Court is Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) and, alternatively, Rule 12(b)(1).  (Doc. 9.)  This matter is fully briefed and ripe for review.  Having considered the parties submissions, the Court recommends the motion be GRANTED in part and DENIED in part.

## I.    Background

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all factual allegations set out in the complaint and draw inferences in the light most favorable to the plaintiff.  *Barker v. Riverside Cty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009).  When resolving a facial challenge to the plaintiff's jurisdictional allegations under Rule 12(b)(1), a court applies the same standard.  *Leite v. Crane Co.,* 749 F.3d 1117, 1121 (9th Cir. 2014).  Therefore, the following facts are taken from Hill's Complaint (Doc. 1) and accepted as true.

Hill was hired as superintendent of Big Horn Elementary School District 2 and High School District 3 ("School Districts") in Pryor, Montana, on July 1, 2019. (Doc. 1 at ¶ 12.)  Hill signed the Employment Agreement (or, "Agreement") with the School Districts on July 8, 2019.  (*Id.* at ¶ 13.)  The Agreement provided for a term of two years ending June 30, 2021 and included renewals of one year annually with approval from the Board of Trustees (or, "School Board").  (*Id.* at ¶ 14.)  The Agreement also provided for a salary, monthly phone allowance, monthly transportation stipend, and monthly housing allowance, as well as other leave-related benefits, travel reimbursement, and health insurance.  (*Id.* at ¶ 15.)

The relationship between Hill and the District soured quickly.  Hill alleges that immediately after being hired he was asked questions about his race, when a member of the hiring committee asked him where he was from because community members thought he was native.  (*Id.* at ¶ 16.)  Then, during an early August meeting with the School Board, Hill requested that the District truncate its' vision statement hanging above the entrance to the elementary school.  (*Id.* at ¶¶ 17-18.)  The statement was adopted from a Chief Plenty Coup quote: "Education is your most powerful weapon.  With education you are the white man's equal; without education you are his victim."  (*Id.* at ¶ 17.)  Hill suggested the vision statement omit reference to race and emphasize education, such that it only read: "Education is your most powerful weapon."  (*Id.* at ¶ 18.)  The School Board declined the

3

request and became upset at the suggestion.  (*Id.* at ¶ 19.)  Hill alleges the

Defendants then sent an individual known as "Spooky" to his office multiple times

to "tell him how things are done in Pryor," as opposed to the "white man's way."

(*Id.* at ¶¶ 18-19.)

At a September 19, 2019 School Board meeting, Hill alleges he was the

target of intimidating behavior from attendees.  (*Id.* at ¶ 20.)  Hill alleges that

comments were negative and accusatory, attacked his character, and included

racially charged phrases such as "white man's way," "white man's world," and

"white devil."  (*Id.*)  One attendee suggested physical harm.  (*Id.*)  When

attempting to speak, Hill was laughed at and heckled.  (*Id.*)  Hill alleges the

offensive comments were directed at him because of his race.  (*Id.*)  Hill also

alleges that School Board members failed to stop or intervene in the verbal attacks,

and some even joined in the behavior.  (*Id.* at ¶ 21.)  During the meeting, the

School Board and attendees spoke about Hill in the Crow language and refused to

interpret for Hill despite his requests.  (*Id.*)  The meeting lasted 5 hours, 51 minutes

and was recorded.  (*Id.* at ¶ 22.)  Hill requested a copy of the recording, but the

School Districts produced only 3 hours, 25 minutes of recording.  (*Id.*)  Hill alleges

that the Districts deliberately manipulated the recording of the meeting, failed to

record it in its entirety, or deleted more than two hours.  (*Id.*)

The day after the meeting, Hill informed School Board members DeCrane and Goes Ahead that he would not attend a conference in Washington, D.C. because of the prior day's events.  (*Id.* at ¶ 23.)  DeCrane and Goes Ahead responded that he would be financially responsible for the costs of the conference and accused him of an unwillingness to "mend relationships," comparing him to a past Caucasian superintendent that was disliked in the community.  (*Id.*)

On September 26, 2019, another School Board meeting was held, in which Hill informed the Board that he filed a complaint with the Montana Human Rights Bureau alleging discrimination.  (*Id.* at ¶ 24.)  Hill alleges that despite advice from the Montana School Board Association's staff attorney to cease the meeting, await internal review, and ensure Hill's due process, the School Board instead proceeded to verbally attack him and retaliate for filing the discrimination charge.  (*Id.* at ¶¶ 24-25.)  Hill alleges the Defendants yelled, swore, and falsely accused him of discrimination, culminating with DeCrane yelling "F _ k you Coul [*sic*] Hill! F _ k you! F _ k you! I f _ king quit! F _ king quit the school board!"  (*Id.* at ¶ 26.)  Defendant Flatlip also stated she quit.  (*Id.*)  DeCrane then threw a chair and threw a pen at Hill, yelling: "F _ k you Coul Hill!  You f _ king son of a b _ h!"  (*Id.*)  The next day, Defendants solicited numerous complaints against Hill.  (*Id.* at ¶ 27.)

Due to the events of the two School Board meetings, Hill expressed to the Defendants a concern for his safety and asked how they would ensure a safe work

environment.  (*Id.* at ¶ 28.)  Hill specifically asked to work from home until his concerns were addressed.  (*Id.*)  Hill alleges that the Defendants dismissed his concerns and refused to allow him to work from home or to take other precautionary actions.  (*Id.* at ¶ 29.)

Instead, on October 7, 2019, Defendants voted to place Hill on administrative leave to investigate complaints against him.  (*Id.* at ¶ 30.) Defendants also voted to discontinue certain benefits provided under the Employment Agreement.  (*Id.*)  Hill alleges that Defendants continued to solicit employee complaints against him and created a process by which they would review the same complaints they solicited.  (*Id.* at ¶ 31.)

On November 12 and 13, 2019, Defendants held a School Board meeting to address the complaints against Hill.  (*Id.* at ¶ 32.)  Hill hired counsel to represent him.  (*Id.*)  On December 3, 2019, Defendants issued findings on the complaints in Hill's favor.  (*Id.* at ¶ 33.)  The School Board found the complaints "did not 'support a finding of workplace bullying, harassment, and intimidation,'" and "fail[ed] to demonstrate that [Hill's] actions arise to the level of a threat or an attempted intimidation of an employee."  (*Id.*)  The Board thus found the complaints did not, "as presented, warrant the termination of [Hill's] employment." (*Id.*)  The Board did, however, demand that Hill attend and complete management

training focused on effective communication with employees and cultural sensitivity.  (*Id.* at ¶ 34.)

The Board also required Hill to return to work without addressing his safety concerns, stating they "w[ould] not consider other conditions as the Board's position is there is no basis for your feeling that you are unsafe at Pryor Schools." (*Id.* at ¶ 35.)  The letter communicating the Board's position was signed by DeCrane, who had directed foul language at Hill, threw a chair across the room, and threw a pen at Hill during one of the meetings.  (*Id.* at ¶ 36.)

Hill continued to request assurances for a safe working environment, but his request was denied as unwarranted.  (*Id.* at ¶ 37.)  Defendants claimed that Hill's "alleged fear remains unreasonable and suspect, particularly in the context of Mr. Hill's past experience in extremely rowdy and rough environments during his time as a rapper." (*Id.*)

Then, on December 16, 2019, Defendants terminated Hill's employment effective December 18.  (*Id.* at ¶ 38.)

## II.    Legal Standard

### A.    Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 12(b)(6) governs a motion to dismiss for failure to state a claim upon which relief can be granted.  A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

2001); see also *Chavez v. Bank of America, N.A.*, 2010 WL 1854087 at *4 (E.D. Cal. 2010) (summarizing the legal standard to be applied to Rule 12(b)(6) motions to dismiss).  "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

The Court evaluates Rule 12(b)(6) motions to dismiss in light of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–678 (2009) (quoting Fed. R. Civ. P 8(a)).  While "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quotations and citations omitted).  "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration original; internal quotes, citations omitted).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Twombly*, 550 U.S. at 570). A claim is plausible on its face when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The claim need not be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts that are "merely consistent with" a defendant's liability fall short of this standard. *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679.

## B.     Fed. R. Civ. P. 12(b)(1)

Fed. R. Civ. P. 12(b)(1) governs a motion to dismiss for lack of subject matter jurisdiction. A defendant may challenge the plaintiff's jurisdictional allegations under Rule 12(b)(1) in one of two ways: "as a facial challenge to the allegations of a pleading, or as a substantive challenge to the facts underlying the allegations." *Atlantic Richfield Co. v. Christian*, 2016 WL 8677253, \*3 (D. Mont. July 8, 2016); *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). As here, a facial attack challenges the sufficiency of the allegations in the complaint on their face to invoke federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035,

1039 (9th Cir. 2004).  A facial attack is resolved in the same manner as a motion to dismiss under Rule 12(b)(6).  The court accepts the plaintiff's allegations as true, draws all reasonable inferences in the plaintiff's favor, and determines whether the allegations are sufficient to invoke the court's jurisdiction.  *Leite,* 749 F.3d at 1121.

## III.   Discussion

Defendants assert that Hill's Complaint fails to state claims and are subject to dismissal under Rule 12(b)(6) and (b)(1).  (Doc. 10 at 7.)  As to Rule 12(b)(6), Defendants argue first that Counts I-III fail to plausibly plead facts sufficient to state a claim under 42 U.S.C. § 1981.  Second, Defendants contend that Hill's two contract claims, Counts IV and V, fail to plead any facts to show a breach of the Employment Agreement or of the covenant of good faith and fair dealing.  (*Id.* at 12.)  Third, Defendants argue that Count VI's claim for violation of the Montana Occupational Safety and Health Act is not plausible because Hill failed to plead facts to show the workplace was unsafe.  (*Id.* at 14-15.)  Fourth, Defendants assert that Hill has failed to plead any facts sufficient to show Defendants blacklisted him, thus Count VII should be dismissed.  (*Id.* at 115-16.)

In the alternative, Defendants argue that should Hill's Complaint survive Rule 12(b)(6) scrutiny, the Court should either dismiss Hill's state law claims in Counts IV-VII under Rule 12(b)(1) for lack of jurisdiction or decline to exercise

jurisdiction.  (*Id.* at 16.)  First, Defendants assert that the Montana Human Rights Act is the exclusive remedy for employment claims based on discrimination in Montana.  (*Id.*)  Second, Defendants argue that Counts IV-VII are not ripe for judicial review.  (*Id.* at 19.)  Third, Defendants urge the Court to decline supplemental jurisdiction over Counts IV-VII.  (*Id.* at 20-21.)

Defendants also alternatively request a stay in proceedings should the Court decline to dismiss the Complaint to allow the administrative proceedings before the Montana Human Rights Board to resolve.  (*Id.* at 21-22.)

The Court will address each argument in turn.

### A.   Rule 12(b)(6)

#### 1.   Counts I-III – § 1981 Claims

Defendants argue that Hill's claims in Counts I-III should be dismissed because the Complaint does not allege facts sufficient to plausibly establish the causation requirement for claims arising under 42 U.S.C. § 1981.  (*Id.* at 8.)

Hill responds that he has properly pled his § 1981 claims with sufficient factual matter such that his Complaint is facially plausible.  (Doc. 11 at 15.)

Section 1981(a) prohibits intentional racial discrimination in making and enforcing contracts, and reads, in pertinent part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is

enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). In *Comcast Corporation v. National Association of African American-Owned Media, et al.*, ____ U.S. ____, 140 S.Ct. 1009, 1018 (2020), the U.S. Supreme Court clarified that "a § 1981 plaintiff first must show that he was deprived of the protected right and then establish causation." The causation element requires that a plaintiff plausibly allege at the outset of a § 1981 claim that "but for race, it would not have suffered the loss of a legally protected right." *Id.* at 1019.

Shortly after the *Comcast* decision, the U.S. Supreme Court elaborated further on the requirements of the but-for causation standard in a Title VII case in *Bostock v. Clayton County, Georgia*, ____ U.S. ____, 140 S.Ct. 1731, 1739 (2020). The Court said causation is established under that standard "whenever a particular outcome would not have happened 'but-for' the purported cause." *Id.* The Court pointed out that the but-for test "can be a sweeping standard," since there are often many but-for causes of an event. *Id.* Relevant to the Defendants' argument here, the Court made clear that a party "cannot avoid liability just by citing some *other* factor that contributed" to the outcome. *Id.* (Emphasis in original.) It is sufficient that the prohibited factor was one but-for cause. *Id.*

12

Under this standard, the Court finds that Hill's Complaint sufficiently alleges a plausible claim under § 1981 in Counts I-III, based on intentional discrimination because of race, hostile work environment because of race, and retaliation for filing a discrimination claim against Defendants with the MHRB. (*See* Doc. 1 at ¶¶ 40, 44, 48.)  Hill alleges that his race became an issue nearly immediately after being hired when a member of the hiring committee asked him where he was from because some people in the community believed he was native. (*Id.* at ¶ 16.)  Thereafter, he alleges that his suggestion to truncate the District's vision statement to focus on education rather than race was met with derisive backlash.  (*Id.* at ¶ 18.)  The ire he provoked allegedly resulted in a number of visits from "Spooky," whom he alleges was sent by the District to admonish him about "how things are done in Pryor," as opposed to the "white man's way."  (*Id.* at ¶ 19.)  Hill further alleges that during a September 19 school board meeting attendees – including some Board members – directed racially charged and offensive phrases his way, such as "white man's way," "white man's world," and "white devil."  (*Id.* at ¶¶ 20-21.)  When he raised concerns regarding the September 19 meeting with School Board members, his concerns were dismissed, and he was compared to another unpopular Caucasian superintendent.  (*Id.* at ¶ 23.)

After filing his discrimination complaint with the MHRB, Hill alleges he was subject to additional intimidating behavior and threats of physical harm at two

School Board meetings, including one board member cursing at him, throwing a chair across the room and throwing a pen at Hill.  (*Id.* at ¶ 26.)  Hill alleges the Defendants failed to stop the intimidation during the meetings and ignored his concerns for his safety.  (*Id.* at ¶¶ 28-29.)  Instead, Hill also alleges that Defendants placed him on administrative leave and discontinued certain contract-based benefits.  (*Id.* at ¶¶ 26-27, 30-31.)  Then, even after the School Board found that the complaints against him did not warrant termination, he was ultimately fired anyway.

Defendants argue that the facts alleged in the Complaint permit alternative, non-discriminatory explanations.  This may be true when considered in isolation. But collectively, the facts alleged plausibly state claims that Hill was subjected to discrimination, and that he would not have suffered the deprivation of his legally protected rights under the Agreement but for race.

Therefore, the Court finds the allegations sufficient to meet the plausible pleading standard for § 1981 claims and recommends Defendants' motion to dismiss Counts I-III be denied.

### 2.    Counts IV and V – Contract-based Claims

In Counts IV and V of the Complaint, Hill asserts claims for breach of contract and breach of the covenant of good faith and fair dealing.  Defendants assert that Hill has failed to plead any facts that his Employment Agreement was

breached, or any facts that suggest Defendants dealt with him dishonestly and did not observe reasonable commercial standards. (Doc. 10 at 12-14.) Hill argues that he stated plausible claims for breach of contract and breach of the covenant of good faith and fair dealing with sufficient factual allegations. (Doc. 11 at 22-26.)

With respect to his breach of contract claim, Hill alleges the District hired him under the Employment Agreement, which provided for a two-year term, from July 1, 2019 to June 30, 2021, and for certain benefits. (Doc. 1 at ¶¶ 12-15.) Hill then alleges that, without cause, Defendants voted to place him on administrative leave, they discontinued some of his benefits under the Agreement, and ultimately terminated his employment prior to the Agreement's term. (*Id.* at ¶¶ 30, 38. 52.) Last, because of Defendants' alleged breach, Hill alleges he suffered and continues to suffer various damages, including lost wages and benefits. (*Id.* at ¶ 53.) Thus, Hill alleges that the parties entered into a valid contract; the Defendants breached the Agreement by discontinuing benefits, and then terminating him prior to the end of the contract term; and he suffered damages as a result. The Court finds these allegations plausibly state a claim for breach of contract.

The implied covenant of good faith and fair dealing requires "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." Mont. Code Ann. § 28-1-211. In *Story v. City of Bozeman*, the Montana Supreme Court further explained:

15

> Each party to a contract has a justified expectation that the other will
> act in a reasonable manner in its performance or efficient breach. When
> one party uses discretion conferred by the contract to act dishonestly or
> to act outside of accepted commercial practices to deprive the other
> party of the benefit of the contract, the contract is breached.

*Story v. City of Bozeman*, 791 P.2d 767, 775 (Mont. 1990) overruled on other

grounds by *Arrowhead School District No. 75 v. Klyap*, 79 P.3d 250 (Mont. 2003).

While "a breach of the underlying contract is not a prerequisite to a breach of the

implied covenant of good faith and fair dealing," a breach of the covenant is a

breach of contract. *Farris v. Hutchinson*, 838 P.2d 374, 375 (Mont. 1992); *Story*,

791 P.2d at 775.

Even leaving aside the race-based allegations, the Complaint plausibly states

a claim for breach of the implied covenant of good faith and fair dealing.  Hill

alleges that because of events at school board meeting, he expressed concern for

his safety and requested that he be allowed to work from home.  The Defendants

dismissed his concerns and refused to provide any measures to provide a safe work

environment.  (*Id.* at ¶ 28-29.)  Instead, Defendants placed Hill on administrative

leave, solicited unfounded complaints against him, and discontinued certain

employment benefits.  (*Id.* at ¶ 30.)  Then, after conducting an investigation and

determining that termination was not warranted, he was fired.  (*Id.* at ¶¶ 33, 38.)

These allegations plausibly allege an attempt to deprive Hill of benefits of

the contract, dishonesty in the Defendants' dealings with Hill, and that Defendants

did not observe reasonable standards of fair dealing in the context of employment in education.  The Court thus finds that Hill's Complaint asserts plausible allegations for breach of the implied covenant of good faith and fair dealing.

Therefore, the Court finds that Hill's Complaint satisfies the plausible pleading standard in support of Counts IV and V and recommends Defendants' motion be denied as to those counts.

### 3.    Count VI - Montana Occupational Safety and Health Act

In Count VI of the Complaint, Hill asserts a claim under the Montana "safe place to work statute," Mont. Code Ann. § 50-71-201.  Defendants argue that Count VI should be dismissed because Hill has not alleged facts to show Defendants failed to protect him.  (Doc. 10 at 15.)  Defendants further argue that if the workplace was unsafe, terminating Hill would only serve to protect his safety.  (*Id.* at 14.)  Hill responds that his allegations properly assert a violation of the duty to provide a safe place of employment under Mont. Code Ann. § 50-71-201(1).  (Doc. 11 at 26-27.)

The Court finds that Hill has not alleged a plausible claim for relief in Count VI because there is no independent cause of action for violation of § 50-71-201.  In *Shannon v. Howard S. Wright Construction Co.*, 593 P.2d 438, 445-446 (Mont. 1997), the Montana Supreme Court established that the safe place to work statute did establish a duty to provide a safe place to work.  But, as recognized in *Trankel*

17

*v. State, Dep't of Military Affairs*, 938 P.2d 614, 624 (Mont. 1997), the court "did not distinguish between the duty which forms the basis for a claim of negligence and a duty which gives rise to an independent statutory cause of action." In *Trankel,* the state district court considered claims of violations of various health and safety statutes, including the safe place to work statute in the then-existing Montana Safety Act. *Id.* at 623-624. The district court found that while these statutes define various duties of employers which may be relevant in a negligence action, they do not provide a separate basis for a claim for damages. *Id.* at 624. The Montana Supreme Court agreed. The Court found that the statutes do establish duties, the violation of which is negligence per se. But the Court also found the enactments did not give rise to causes of action independent from a claim of negligence. *Id.* at 625 ("we affirm the District Court's conclusion that the Occupational Health Act [and] the Montana Safety Act … did not give rise to independent causes of action.").[1]

In this case, Hill has not alleged a claim for negligence. Even if his claim in Count VI could be so construed, his allegations regarding workplace safety would, at most, plausibly allege a violation of the statute and possible negligence per se.

---

[1] Section 50-71-201 was amended in 2009. The amendment narrowed the scope of the statute and provided for certain exceptions to its application. But the amendment did not include any provision which could be construed to alter the Court's decision in *Trankel* to create an independent action under the statute.

18

But "the existence of negligence per se settles only the questions of duty and breach." *Olsen v. Shumaker Trucking and Excavating Contractors, Inc.*, 196 P.3d 1265, 1277 (Mont. 2008). Hill would still need to allege facts to show causation and damages as a result of the alleged violation of the statute to state a claim. *Id.* He has not done so.

Nevertheless, the Court cannot say at this juncture that Hill cannot allege facts to plausibly state a claim based upon the violation of a duty under Mont. Code Ann. § 50-71-201. Therefore, the Court recommends Count VI be dismissed without prejudice.

### 4.    Count VII - Blacklisting

In Count VII, Hill alleges that Defendants have violated Montana's "blacklisting statute," Mont. Code Ann. § 39-2-80, by refusing to provide him a certification of employment. Defendants argue Hill has not pled any facts to show they blacklisted Hill. (Doc. 10 at 15.) Defendants assert that the blacklisting statute does not require them to supply Hill with certification he was employed with the District, only reasons for discharge. (*Id.* at 16.)

Hill responds that the plain language of the blacklisting statute prevents Defendants from taking any action to preclude him from obtaining other employment, and their refusal to provide a certificate of employment is such an action. (Doc. 11 at 29-30.)

The statute is codified in Mont. Code Ann. § 39-2-803 and reads:

> If a company or corporation in this state authorizes or allows any of its agents to blacklist or if a person does blacklist any discharged employee or attempts by word or writing or any other means to prevent any discharged employee or any employee who may have voluntarily left the company's service from obtaining employment with another person, except as provided for in 39-2-802, the company, corporation, or person is liable in punitive damages to the employee prevented from obtaining employment, to be recovered in a civil action, and is also punishable as provided in 39-2-804.

The Court finds Hill's allegations fail to plead sufficient factual matter to state a claim under Montana's blacklisting statute. Hill alleges that the Defendants have refused to provide written certification that he worked for the Districts from July 1, 2019 to December 18, 2019, and that without this certification he is unable to secure employment as a superintendent. (Doc. 1 at ¶¶ 66-67.)

Hill's allegations are similar to those alleged in *Addington v. Prince Telecom, LLC*, where this Court found the bare allegations of blacklisting to be conclusory, formulaic assertions that failed to state a claim. *Addington v. Prince Telecom, LLC*, 2016 WL 3079695, at *2 (D. Mont. May 31, 2016). In *Addington*, a terminated employee alleged an agent of his former employer told prospective employers he could not work in the state, that the statement was false, and as a result he suffered damages. *Id.* The Court found that the claim left "unclear the timing of the statement, the context of the statement, how and to whom the statement was disseminated, how the statement is false, how the statement was

20

used to prevent [the plaintiff] from obtaining employment with another person, and how the statement damaged [the plaintiff]." *Id.*

The same is true here. Assuming Defendants' refusal to provide a certificate of employment constitutes "any other means" under § 39-2-803, Hill has not alleged any facts establishing how, and by whom, a certificate of employment is required; when he requested the certificate; when it was refused; or what job prospects he lost due to a lack of a certificate. In short, Hill alleges no facts showing he was prevented from obtaining employment by the Defendants' actions.

Again, however, because it may be possible to cure the defects in the claim through amendment, it is recommended Count VII of the Complaint be dismissed, without prejudice.

**B.     Rule 12(b)(1)**

**1.     Exclusivity under the Montana Human Rights Act**

In the alternative, Defendants further assert that the Court lacks subject matter jurisdiction of Hill's state law claims (Counts IV-VII) because the Montana Human Rights Act ("MHRA") provides the exclusive remedy for claims based on discrimination in Montana.

The Court may exercise supplemental jurisdiction over Hill's state law claims under 28 U.S.C. § 1367, where the relationship between the federal action and the state law claims are sufficient to "form part of the same case or controversy

under Article III of the United States Constitution."  Since Hill's federal claims

under § 1981 and his state law claims arise out of a common nucleus of operative

facts, this Court has discretion to exercise supplemental jurisdiction over Hill's

remaining state law claims of breach of contract (Count IV) and breach of the

implied covenant of good faith and fair dealing (Count V).  *Bahrampour v.

Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) ("A state law claim is part of the same

case or controversy when it shares a common nucleus of operative fact with the

federal claims and the state and federal claims would normally be tried together.")

(Internal quotations and citations omitted.)

   "When a district court . . . hears state law claims based on supplemental

jurisdiction, the court applies state substantive law to the state law claims."  *Mason

& Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir.

2011).  Under Montana law, the MHRA provides the exclusive remedy for conduct

constituting illegal discrimination as defined by the Act.  Mont. Code Ann. § 49-2-

512.  The MHRA establishes an administrative process for the investigation and

determination of complaints of discrimination.  Mont. Code. Ann. § 49-2-501 *et

seq*.  A complainant must first resort to that administrative process prior to

proceeding to state district court.  Mont. Code. Ann. § 49-2-501.  And even if the

claimant may ultimately proceed in district court, the court is constrained in

providing only the relief permitted in the administrative proceedings, in addition to awarding attorney fees and costs.  Mont Code Ann. § 49-2-511(3).

The Montana Supreme Court has observed that litigants have attempted to circumvent the procedural and substantive limitations posed by the MHRA by improperly characterizing the nature of their claim.  See e.g., *Saucier ex rel. Mallory v. McDonald's Restaurants of Montana, Inc.*, 179 P.3d 481, 493 (Mont. 2008).  The Montana Court has recognized that "permitting a party to bypass the MHRA's procedures in so doing 'would be to eviscerate the mandate' of the MHRA, requiring it provide the exclusive remedy for acts constituting violations thereof."  *Lay v. State Dept. of Military Affairs, Disaster and Emergency Services Division*, 351 P.3d 672, 675 (Mont. 2015) (quoting *Harrison v. Chance*, 797 P.2d 200, 205 (Mont. 1990)).  Therefore, the Montana Supreme Court has "consistently looked to the nature of the acts alleged by plaintiff as opposed to the manner in which the complaint is framed to determine the 'gravamen' of the complaint."  *Saucier*, 179 P.3d at 493.[2]

---

[2]  The MHRA was amended in 2007.  The Montana Supreme Court has recognized that the revisions to the MHRA "mercifully" render the gravamen analysis no longer necessary when considering whether suit can be filed in district court following dismissal by the Human Rights Board.  *Griffith v. Butte School Dist. No. 1*, 244 P.3d 321, 331 (Mont. 2010).  The court cautioned, however, that the analysis is still necessary where the plaintiff files a claim in district court before filing a claim with the Human Rights Board and receiving a notice of dismissal. *Id.*

In making the gravamen determination, the Montana Supreme Court has held that the MHRA "bars a plaintiff from pursuing other tort claims where those claims arise from underlying allegations of . . . discrimination." *Arthur v. Pierre Ltd.*, 100 P.3d 987, 992 (Mont. 2004).  Conversely, "a claimant may pursue relief in district court . . . 'provided that claim is not premised upon underlying allegations of . . . discrimination.'" *Saucier*, 179 P.3d at 497 (quoting *Vettel-Becker v. Deaconess Medical Center of Billings, Inc.,* 177 P.3d 1034, 1041 (Mont. 2008)).  In deciding whether a claim arises from underlying allegations of discrimination, the Montana Court has, at times, evaluated the allegations in a complaint to determine whether a claim is stated in the absence of allegations of discrimination.

In *Bruner v. Yellowstone County*, 900 P.2d 901 (Mont. 1995), for example, the plaintiff brought a claim against Yellowstone County alleging negligent retention of an employee who sexually harassed her.  The Montana Supreme Court affirmed summary judgment for the County, finding that the plaintiff's claim was grounded in sexual harassment and plaintiff failed to first timely file a complaint under the MHRA.  *Bruner v. Yellowstone County*, 900 P.2d 901, 905 (Mont. 1995). In so holding, the court pointed out that "[i]f the sexual harassment were removed from the factual picture, plaintiff would have no tort claim.  Because the sexual

24

harassment is at the foundation of her claim of negligent retention, the only remedy she has is in the Human Rights Act …." *Id.*

Similarly, in *Lay* the Supreme Court held the plaintiff's claims for sexual favoritism and retaliation must be brought under the MHRA. The court recognized that the "allegations of sexual favoritism and retaliation are, in fact, the only allegations contained in the complaint. If these allegations were removed from the complaint, [plaintiff] would have no actionable claim of any kind." *Lay*, 351 P.3d at 675.

On the other hand, if a plaintiff can show that a claim can be sustained without underlying allegations of discrimination, it may be brought outside the framework of the MHRA. In *Vettel-Becker v. Deaconess Medical Center of Billings, Inc.,* 177 P.3d 1034 (Mont. 2008), for example, the plaintiff was terminated from his employment on the basis that he was "not a good fit," and that his last evaluation showed mixed results. *Vettel-Becker*, 177 P.3d at 1039. After his termination, the plaintiff filed a discrimination complaint with the Human Rights Bureau, and subsequently filed a claim for wrongful discharge in state district court. *Id.* After the plaintiff's MHRA claim was dismissed, he amended his complaint in district court to include his claim of discrimination based on gender, religion and marital status. *Id.* The district court ultimately dismissed plaintiff's discrimination claim, finding that he failed to make a prima facie case of

discrimination.  *Id.*  The court also dismissed his wrongful discharge claim,

concluding that the MHRA provided the exclusive remedy for both his wrongful

discharge and discrimination claims because he raised the same facts in support of

both claims.  *Id.*

Plaintiff appealed the district court's dismissal of his wrongful discharge

claim and argued that the gravamen of his wrongful discharge and discrimination

claims were not the same.  *Id.* at 1040.  He maintained that he had offered facts

that negated good cause for his termination which were completely aside from any

allegation of discrimination.  *Id.*  The Montana Supreme Court agreed, stating that

the plaintiff was entitled to pursue his wrongful discharge claim, "provided that

claim was not premised upon 'underlying allegations . . . of discrimination.'"  *Id.* at

1041 (quoting *Arthur*, 100 P.3d at 992).  After reviewing the facts alleged, the

Montana Supreme Court concluded his wrongful discharge claim did "not rest or

depend upon establishing discrimination," and therefore the MHRA was not the

exclusive remedy for his wrongful discharge claim.  *Id.* at 1042.

This Court applied this same analysis in an action involving both claims of

discrimination and others not dependent on discrimination in *Brandt v. Old

Dominion Freight Line, Inc.*, 2019 WL 1598585 (D. Mont. April 15, 2019).  That

case included a claim of retaliation for reporting sexual harassment as well as a

claim for wrongful termination based on his termination without good cause.  *Id.* at

26

*1.  This Court determined that the retaliation claim was subject to the MHRA because it was plainly premised on discrimination.  *Id.* at *2.  But plaintiff's other claims were premised on facts separate from his report of sexual harassment, and therefore did not require exhaustion of the MHRA procedures.  *Id.*

In this case, two state law claims remain – Hill's claims for breach of contract (Count IV) and for breach of the implied covenant of good faith and fair dealing (Count V).  With respect to breach of contract, the claim does not rest or depend upon establishing discrimination.  Hill must show that he had a valid existing contract with the Defendants, that Defendants breached an obligation under the contract, and damages resulted.  None of these elements require proof of discrimination.  The relevant issue is whether there was, in fact, a breach of the parties' agreement.  The reason *why* the Defendants breached the agreement is immaterial.  Therefore, Hill's breach of contract is not premised upon underlying allegations of discrimination.

As to Hill's breach of the implied covenant of good faith and fair dealing claim in Count V, some of the allegations asserted in connection with the claim appear to relate to Hill's discrimination claim.  Hill alleges, for example, that the covenant was breached by not providing an interpreter when the Crow language was used during school board meetings, by swearing and threatening Hill at school board meetings, which involved racially charged language, and by alleged

retaliation for submitting a claim of retaliation under the MHRA.  (Doc. 1 at ¶ 56.)
To the extent his bad faith claim is premised on these allegations, it could not be
brought outside the MHRA.

But Hill's allegations in Count V also include allegations which may not be
premised on discrimination.  Hill also alleges the covenant was breached by the
board soliciting complaints against Hill; placing Hill on administrative leave;
removing certain benefits guaranteed to Hill while he was on administrative leave;
refusing to provide Hill with a safe working environment; and ultimately
terminating his employment without justification.  (*Id.*)  These allegations are
sufficient on their own to state a plausible claim for breach of the implied covenant
of good faith and fair dealing, and to the extent these allegations do not relate to
discrimination, the claim is not subject to the MHRA.

Defendants are correct that Hill's arguments with respect to Counts I-III and
Count V may be inconsistent.  Hill alleges, on the one hand, that all of Defendants'
actions were taken because of race in connection with his civil rights claims in
Counts I through III, but then alleges his bad faith claim in Count V is not
premised entirely on allegations of discrimination.  But a party is permitted to
"state as many separate claims or defenses as it has, regardless of consistency."
Fed. R. Civ. P. 8(d)(3).  Hill may ultimately not be permitted to recover on all

28

claims alleged in his Complaint, but he is permitted at this early stage in the proceedings to state all claims he may have, even if inconsistent.

### 2.    Ripeness

Defendants alternatively argue that Counts IV-VII are not ripe for because they are governed by the MHRA and its administrative process. (Doc. 10 at 19-20.)  As discussed above, however, the remaining state law claims in Counts IV and V may be brought outside the MHRA and are ripe for adjudication.

Therefore, the Court recommends Defendants' motion as to ripeness be denied.

### C.    Discretionary Jurisdiction

Defendants also argue that the Court should decline to exercise jurisdiction under 28 U.S.C. § 1367.  The exercise of jurisdiction under § 1367 is discretionary, and may be declined if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C.A. § 1367(c).

None of these circumstances are present here, and the Court recommends Defendants' motion as to discretionary jurisdiction be denied.

### D.    Motion to Stay

Last, Defendants request the Court to stay these proceedings, should its other arguments fail, while Hill's claim is pending before the Montana Human Rights Board.  (Doc. 10 at 22.)  Hill argues there is no legitimate reason to stay these proceedings because the MHRA proceedings will not resolve any matters before this Court.  (Doc. 11 at 33.)

The Court agrees with Hill.  First, Hill's § 1981 claims are federal questions independent from any administrative claims under the MHRA.  *Spillers v. Third Judicial Dist. Court*, 456 P.3d 560, 565 (Mont. 2020).  Second, Hill's contract claims share the same operative nucleus of facts with the § 1981 claims such that this Court finds it proper to exercise supplementary jurisdiction over them.  Last, Hill's contract claims fall outside of the exclusivity of the MHRA.  *See* Mont. Code Ann. § 49-2-512(1).

Therefore, the Court recommends Defendants' motion to stay proceedings be denied.

### IV.    Conclusion

In sum, the Court finds that Hill has stated plausible discrimination claims under 42 U.S.C. § 1981 in Counts I-III and breach of contract claims under

Montana law in Counts IV and V.  But the Court also finds Hill has failed to state claims for which relief may be granted in Counts VI and VII.  Therefore,

IT IS RECOMMENDED that Defendants' Motion to Dismiss (Doc. 9) be GRANTED in part as to Counts VI and VII, without prejudice; and DENIED in all other respects.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

**IT IS ORDERED**.

DATED this 16th day of February, 2021.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge